Good morning. May it please the court and counsel, I'm Jeffrey Jacobson representing John France in this age discrimination case. I'd like to reserve five minutes for rebuttal. The court erred in granting summary judgment in this case because John France advanced ample direct evidence of conduct and statements by those involved in the selection process of the agency's discriminatory intent without any inference or presumption. Mr. France also advanced circumstantial evidence within the McDonnell-Douglas burden shifting framework such that a rational fact finder could find the agency's alleged non-discriminatory rationale for the non-selection was unworthy of credence, inconsistent and unbelievable, and therefore raises an inference of mere pretext. Can we focus in, could you focus in your discussion on whether or not your client made a prima facie case? Because that seemed to be what concerned the court below. Yes, Your Honor, although the district court did establish You did also find that you hadn't gotten past the last stage, but if you don't get to the first stage, you don't get to the last stage. So start at the first one. So the issue for the court, really, I believe, was whether or not the selectees were substantially younger than the, than Mr. France was, who was 54 at the time. The selectees were 48 years old, 47 years old, 45, and 44. So now you've focused on exactly the issue I wanted to ask you about, so thank you. So what, do we use the average age of the selectees, the youngest age, the oldest age, the median, the mean? What do we do? It's a fair question, Judge, but this Court has consistently eschewed an overly strict formulation of the elements of a prima facie case, including and especially the significantly younger prong. And the case law tells us that McDonnell-Douglas application is not supposed to be rigid and formulaic. Right. But there's some number at which you automatically have made your prima facie case. And our cases seem to suggest it's 10 years. And, and the, and the courts, this Court especially is, has not established a precedent saying 10 years as an arbitrary number is substantially younger. But if you're 9 years, 11 months. Right. No, I'm not talking. What should the rule be, then, in your view? Yeah. Tell us, tell us what it should be. What should the rule be? It should be a totality of the circumstance case. It really should be an individual you have to, especially in age discrimination cases. Couldn't you make a prima facie case, put aside the, let's assume that you had a 54-year-old person and they hired four 18-year-olds. Would you then have to have any additional evidence to make your prima facie case? Under that hypothetical, no, sir. Okay. So there is some number at which the prima facie case is made simply by a divergence of numbers. I agree. What, what number do you think that is, Judge? So I'll put the follow-up on Judge And, you know, the Sixth Circuit, and I apologize, I can't think of the name of the case off the top of my head, but there was a Sixth Circuit case that analyzed all of these, these age discrimination cases and looked at it and said, yeah, 10 years is a fairly bright-line rule in terms of what other circuits have found. In this case, you do have one of the selectees who was 10 years. But there is more to the other things. I just want to focus on this for a second, because as you suggest, it's an area where our jurisprudence may not be settled. So focusing solely on this age differential, how should we analyze it in your view? Is it a 9.5-year differential? Is it a larger one? Tell me what it is. I think you have to look at each individual selectee in this case, because these cases, prima facie cases really are a case-by-case basis. So you can look at, for example, Roy Hotz, who was 45, and say 9 years. Well, that's close enough in the context. But maybe Richard Moody, who's only 7 years or 6 years difference from Mr. France when he was selected. Maybe if it was just Mr. Moody and not the other three who are older, I'm sorry, younger, and therefore the spread is different. I think in that case, you might have an argument that Mr. France was not substantially younger. But in this case, you have four selectees. So you think we need to analyze the positions one by one? Yes. Weren't they essentially the same position? They were essentially the same position. And the hiring was done at the same time? Correct. So what if they'd hired one 63-year-old and four 18-year-olds? You'd then say I get to compare myself to the 18-year-old, not the 63-year-old? I understand the point. I do. And I think in those cases, there is a clear delineation, 63 versus 18. No, I'm saying your client's 54. They hire one guy who's older and three people who are much younger. Your argument is I get to compare myself to the three who are much younger, not to the one who's older? I used 54 because that was the age of Mr. France at the time of the selection. I'm still not sure I've gotten any guidance from you about how we do the purely mathematical case. I understand how we look at other facts and circumstances, but let's assume all we have is mathematics. How do we do it? Well, I think in terms of the mathematics question, Judge, courts And no one told you math would be involved, but it's an interesting case. It's an interesting question because the courts, especially some of the cases cited in the briefs, do look at statistical evidence. And they're, if you not only read between the lines, but if you read them very carefully, courts disfavor statistical evidence and analysis, especially in age discrimination cases. Well, but you're still We'll try one more time, because I'm looking for help here. I'm really not trying to trap you. You suggest, and I think correctly, that our jurisprudence on this is not definitive. Let's assume we have a case like yours in which there is no other evidence but the mathematics. How should we analyze that case? Do we use the average age of the hirees? Do we use the youngest hiree to compare? Do we use the oldest one? We have to write an opinion. So tell us what the opinion should say. I think if I were sitting in your chair, sir, I would look at not just the average age. I would look at all of it. I would look at the individual selectees. I would also look at the spread. So I don't think, especially in an age discrimination case, you can point to one element and say, we're going to use the median. We're going to use the mean. We're going to use the spread. I think, and I understand what you're looking for is a bright line rule, but I'm not sure, with the exception of maybe the Sixth Circuit, that bright line rule exists. Maybe the Third Circuit, I think. And counsel, could I ask you a question? Yes. Do we have pre-existing precedent that says, in assessing a prima facie case, we should be looking at the total circumstances? Yes, Judge. There is precedent for that. It is not cited in the briefs, however. So I'm a little hesitant to raise it, but there is precedent within this circuit that says, essentially age is a continuum, along which distinctions between employees are often subtle and relative, and that's why it is a case-by-case analysis. I don't think there's anything wrong with you giving us a reference to a case that wasn't in your brief, if it's supporting an argument that was in your brief. I'm thinking if I have, if I can put my hand on it. I don't think I can put my hand on it right now, Judge. But I can supplement. Just ask it. That's okay. Let me ask in terms of the questions my colleagues have asked. If we were just writing on a blank slate and had to make up a rule, and come up with what we thought was the best rule for the Ninth Circuit, what should that rule be? I think a fair rule is 10 years, and this answers Justice Hurwitz's question. I think 10 years is a fair number, but I would not call it a bright-line rule. I would call it a guideline. If I can interrupt. I don't want to interrupt Judge Gould, so if he has a, if he's following up, let me stop for a second. My only follow-up. Would the best rule that we could come up with, would it say that we should look at total circumstances in assessing a prima facie case? That is, that is the rule I'm proposing, sir. Yes. I'm still back. Your answers to Judge Gould's questions have clarified something for me. So if you say 10 years ought to be what? If you can show that it exceeds 10, equals or exceeds 10 years, you've made your prima facie case, or that's just something to take into account? I would agree that I didn't, well, I said two things. Do you have to pick one of them? I would say that 10 years would be a fair benchmark. For a prima facie case? Yes. Okay. Assuming that was our rule, what was the gap in this case? The gap is between 6 years and 10 years. So you have the See, see, what you're saying, even though you resist coming up with the rule, is you want us to look at the youngest hiring? Yes. Okay. So if I can rephrase for you, what you say our rule should be is that 10 years would be a reasonable measure of our prima facie case. And when we look at the gap, we ought to look at the youngest hiree, not the average age of the hirees. That's correct. Thank you for rephrasing. Okay. If that's the rule, and that's the rule I would suggest if I were in your position, what is Diaz? Diaz is a case that, that it's a different, slightly different context, but it says you should look at the average age of the hirees. That is correct. That is what Diaz says. Is it distinguishable here? Are we bound by it? I'm down to four and a half minutes left for rebuttal. Do you want to think about it and tell us when you go back? May I reserve that argument for rebuttal? Sure. Unless anybody else is. Thank you. Thank you. Good morning, Mr. Miskell. Good morning. May it please the Court, I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the Secretary of the Department of Homeland Security. To follow up on the question you asked Mr. Jacobson, I agree that 10 years is a good benchmark, but I think considering what we're trying to decide in an age discrimination case, that the average age is the age we should be looking at, actually, especially when there is a group. These four positions were hired at the same time, based on the same interviews, all, excuse me, tested at the same time, basically. So in that sense, considering the fact that the test ultimately for age discrimination is a but-for test, we should be looking at the average age of the people. So let's suppose you're right about that, and he doesn't get the advantage of an inference because of the age gap isn't severe enough. Why doesn't he have other facts to survive summary judgment? Because to make the prima facie case, that's one of the facts is he has to show that the person hired was substantially younger than him. But it's not only the age gap. Excuse me if I could just finish this for a second. Sure, sure. If he doesn't have the benefit of the inference, he does have somebody, a guy, was it Gilbert, saying we want to have younger, we're trying to groom younger people, why doesn't that get him by summary judgment? Because if you look at the requirements and they're laid out, I believe it's most recently in the Shelley case of this Court, the four factors for the prima facie case, at least 40 years old, he met that one, no question. Qualified for the position, again, he met that one, no question. Denied the position, again, no question. But then the promotion was given to a substantially younger person. He hasn't met that standard for the prima facie case for the circumstantial evidence test. Now, to the extent the Court is suggesting that he's met the direct evidence test, that's another discussion. Well, what's your answer to my question? He has not met the direct evidence test, as the district court found. And why, when they say we want to groom younger people, doesn't that cut it? I would say by summary judgment. Because you've got to look at the – first of all, you've got to look at who the ultimate decision-maker was in this case. And as the plaintiff pretty much says in his reply brief, the person to look at is National Border Patrol Chief Aguilar in Washington, D.C. Let me stop you there. If Aguilar had said that, what would be the answer? That might be, depending, again, on the circumstances, because there's case law in this circuit that talks about simply stray comments like that aren't sufficient to meet the direct evidence test. He makes that a stray comment instead of a direct expression of his view. Because it's a one-off kind of situation. How do we know it's a one-off? I mean, if the boss says – and this is Judge Silverman's hypothetical – if the boss says, let's go hire some younger people, and they do, why is – and the younger people are only 9.5 years, on average, younger than the person who is applying for the position, is it your position that doesn't make a prima facie case? In the context? This case. This case. We have all the facts. I'm not worried about another case. Okay. And I want to keep clear of the distinction between direct and the circumstantial. Right. But what I'm trying to do here is combine direct and circumstantial evidence. And I think that's what Judge Silverman says, is it enough that somebody says, let's go hire younger people. You say, eh, it's probably not enough because it's a stray comment. Now we have, let's go hire younger people, and they do. They're not more than 10 years younger on the average, but they go out and hire younger people. Put those two facts together. Those are the only facts in the universe. Isn't that enough to make a prima facie case? I would suggest that, again, if you're talking just that one comment, I don't think under this Court's case law it is. For example, there's a case that's – But one comment and the fact that they go out and do hire people who are younger, even though they're not more than, on the average, 10 years younger. That's your case. So tell me why that's not a prima facie case. Okay. And as I said before, what I was saying before is Chief Aguilar is the one to look at in this case, I believe. Let's turn back to that. But Judge Silverman asked you to assume it was the boss. So I think that would be a much tougher case for the defendant in that scenario. But I'm not sure in and of itself if those were the only facts we had, that would be enough. But of course – Judge Gould had a question, I think. Yeah, I wondered, when you fall back on the idea that Aguilar was decision maker, I wondered if you'd looked at a precedent of opinion I wrote in a case called Poland versus Chertoff, which suggested, following a Seventh Circuit decision, that when the biased person who'd made statements was not the ultimate decision maker, that we have to look at whether that biased person contributed to or influenced the decision. And assuming that a rule like that or something like that is applicable here, I'm having trouble not seeing Gilbert as influencing the decision. He came up with the GS-15 positions. He recommended a bunch of people. They were adopted by Aguilar. They were passed on. It's the same exact people to Ahearn. They were adopted by Ahearn. How could one say he did not influence that decision? I think if you look at the facts of this case and considering the history that National Board of Prosecutors Aguilar had with this plaintiff, that's the distinguishing factor here. In other words, before he became National Board of Patrol Chief, Chief Aguilar was the chief of the Tucson sector where he supervised the plaintiff. The record indicates that the plaintiff did not have a high opinion of Chief Aguilar. And Chief Aguilar was not happy with some of the stuff the plaintiff did. But this is on summary judgment. So I mean, how could we just credit that point and ignore other evidence? Isn't that an issue for a jury to assess? Well, first of all, I believe in this case it'd be a bench trial. But regardless, the trier of fact, what we're looking at, is there a genuine material issue of fact here? And there is, you read the plaintiff's own comments, it's clear that he did not have a high regard for Chief Aguilar. But what difference does that make? The question is whether Chief Aguilar had any, as Judge Gould asked, had any role in influencing the decision. Doesn't the record suggest that Chief Aguilar was involved in the decision-making process? What does the record tell us about Chief Aguilar's participation in the decision-making process? Chief Aguilar, it's undisputed, Chief Aguilar made the recommendation to the deputy, I think it's Deputy Commissioner Ahearn, who said that he relied pretty much totally on Aguilar's recommendation. So he was involved, he influenced the process in Judge Gould's opinion.  Right? That is correct. So do you agree that Gilbert influenced what Aguilar did, and that Aguilar influenced what Ahearn did? There was some impact, certainly. Isn't that enough to get past summary judgment, if his motivation was ageist? Again, if we're going back to the circumstantial test, Chief Aguilar articulated the reasons why he didn't select the defendant. Excuse me, the plaintiff. He had a list of them, but let me just focus on a couple of them. When Chief Aguilar became the chief of the Tucson sector, he wanted to change things. He was concerned about illegal entrants who were dying in the desert, and he wanted to move the Border Patrol's operations closer to the border. Defendant resisted that. Defendant thought it was a bad, excuse me, plaintiff, I'm sorry. Plaintiff resisted that. Plaintiff thought it was a bad idea. Plaintiff, according to Chief Aguilar, he had to, and this, I could not find anything to dispute this in the record. He had to use what he called enhanced supervision to make sure his directive was followed through because he had personally seen instances when the plaintiff did not follow through. That situation in and of itself is ample reason why. But when nobody's disputing that if you get past prima facie case, the government, the secretary, offered non-pretextual reasons. Okay. I also think it would be difficult to dispute that the plaintiff in this case offered some evidence from which a finder of fact could find that the reasons were pretext. We've been focusing on step one of the analysis, which is the prima facie case. And so I'm still back to what Judge Gould was asking you about. If Chief Gilbert made this comment, if Chief Gilbert was influenced the decision making process, and if the process resulted in the hiring of people not more than ten years older, but 9.5, why doesn't that make a prima facie case? Again, Judge, I'm somewhat — we seem to be kind of combining what our distinct analysis is. Well, I'm trying to combine it, because we have a — we have under the — under McDonnell Douglas a three-stage analysis. Right. But that — We have a prima facie case. If you don't make the prima facie case, you don't pass GO. You don't collect $200. Okay. Then, if you make the prima facie case, you have to come back with non-pretextual reasons. I'm telling you, I think you've got a whole bunch of them. And then the — and then the plaintiff has to create an issue of fact about whether they are pretextual. Let's assume that steps two and three are — get taken care of. I've been focusing on step one, the prima facie case. So on this set of facts — and I'll just give you three facts. Chief Gilbert says what he says. Chief Gilbert influences the decision process. These are undisputed facts. And the result of the hiring process is the result. These four people are hired. Why don't those facts together, looking at all the circumstances, make a prima facie case? This Court, and I believe all courts, have a distinction. And there are two ways a defendant can — Right. There's direct evidence and there's — and there's circumstantial evidence. So you — We have direct evidence that Chief Gilbert wants to hire younger people. We have direct evidence that he influences the process. We — and then we have a result of the process, which is that these four people are hired. That's the circumstantial side. What's your answer to that? What's your answer? I mean, direct evidence is defined as evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. I don't think what we're talking about reaches that. And to give some examples, excuse me one second. This Court has found there was one case that was involving PepsiCo about a statement about we don't like — we don't want gray hairs. That's not sufficient direct evidence. This comment is about the same as that, I would say. This is — the comment of we're looking for — assuming it was made, we're looking for younger people doesn't say that, especially when, in the context of what you're talking about here, they were talking about a two-tiered system. Remember when — what Judge Gilbert was deciding — was describing was a scenario or a plan where there would be several people at the GS-14 level, which is a lower level, and then several people at the GS-15 level. The — arguably, assuming it was made, the younger comment could have been directed towards the GS-14 level people. Well, but let me just try this again, because I think we're missing each other. Okay. And I don't know the answer to this question, so I need your help on it. Let's assume this comment on its — on its taken by itself is not enough to make a prima facie case under our case law. But then we also have the hiring of people who are on the average 9.5 percent younger. If you put those two facts together, does it make a prima facie case? And if not, why not? The direct evidence on its own doesn't make a prima facie case. The circumstantial evidence on its own doesn't make a prima facie case. But they both leans in favor of the plaintiff. Can we put them together and find a prima facie case? I would — I would say the answer to that is no. If you don't meet the direct evidence case or the direct evidence standard, then you move to the circumstantial evidence standard. So there's — in your view, they are separate tests not to — not to be used in conjunction with each other? They're separate tests. I mean, the facts certainly may apply either way, but they're separate tests, yes. And you've got — I think analytically, that's the only way it makes sense. You've got the direct evidence first. If you don't meet that, you go to the circumstantial test. Then the circumstantial test is, do they make the prima facie case? So it's just not an interesting position. If you get halfway there with the direct evidence, you can't get the other halfway there with the circumstantial evidence. Unless the evidence that — your halfway evidence for the direct evidence establishes the prima facie case, which in this case it does not. Counsel, then your argument seems to be that when considering circumstantial evidence, that — that the Court is required to disregard any direct evidence that's also in the case. No, I'm not saying that. I'm saying you can consider that evidence, but if that evidence doesn't establish the four requirements for the prima facie case, the defendant — the plaintiff loses. I'm sorry to interrupt you. We'd never get to the circumstantial case if the direct evidence established a prima facie case, would we? That is correct. So your answer to Judge Gould's question, I think, is if the direct evidence isn't sufficient to make the prima facie case, we must ignore it when we look at the circumstantial evidence? No, I'm not — I am not saying that. What I'm saying is, and I think this Court's case law says, you can certainly consider that evidence in evaluating whether a prima facie case is met, but the prima facie case has four very specific elements, and this evidence doesn't go to any of those, so it doesn't establish a prima facie case. Thank you, Mr. Miskell. Thank you. Mr. Jacobson, back to you, sir. Thank you, Judge. Before I address the Diaz question, I do want to point this Court to the — and I don't want to butcher the name — it's Twang, C-H-U-A-N-G-V-U-C Davis. That's 225 F. 3rd, 1115. In that case, at page 1127, this Court said that a plaintiff can prove pretext in two ways, indirectly by showing the employer's proffered explanation is unworthy of credence, or two, directly by showing the unlawful discrimination more likely motivated the employer. These two approaches are not exclusive. A combination of the two kinds of evidence may in some cases serve to establish pretext so as to make summary judgment. But aren't we talking about Step 3 there? We are. But the Court does have some precedent to say that it's not just direct evidence, because I think — That's on Step 3. What about Step 1? Correct. That's correct. But there's not — not that I'm aware there's any case law that says, any precedent that says you only look at direct evidence in Step 1, because you can prove it. You can prove Step 1 direct or by direct evidence or circumstantial evidence. And I would say that there is ample direct evidence in this case, because we're not just talking about one comment about age. What we actually have here is two age-related comments by Chief Gilbert, three instances where Chief Gilbert and or his deputy, Chief Boatwright, try to push Mr. Franson to a rehired annuitant position. You have three separate retirement discussions, and you have two offers to essentially demote Mr. Frans to a patrol agent in charge, all the while stripping him of his managerial portfolio, Operation Streamline, et cetera. So you don't just have what is essentially a stray remark case, which is an ambivalent statement made miscively. So your position is that direct evidence on its own is sufficient? Absolutely. What if it's not? What do we then do? The question I've Mr. Misko and I struggled with, I think. What do we do if the direct evidence is not sufficient and the circumstantial evidence on its own is not sufficient? Can we, as Judge Gould asked, look at them together? Yes. Absolutely. What case says that? I don't believe there is a case necessarily that says that. I don't believe that there's a case that says that you can't either. In other words, I believe the analysis goes hand in hand. Remember, at least in terms of direct evidence, the standard is that a plaintiff is required to prove, quote, very little direct evidence of the employer's discriminatory intent to move past summary judgment. And that's also in the Twang case. And you asked me to distinguish the Davis case. I'm sorry, the Diaz case. The Diaz case involved a seasonal slowdown in the agriculture business. That was one of the statistical evidence cases that I referenced earlier in my argument. In Diaz, they did say that a nine and a half year age difference was not significant. But what makes Diaz unique is that all of these people that complained of age discrimination were hired by, were hired after they were over 40 years old. So they were all over 40 when they were first hired. And you have a sole actor inference in that case. Meaning that the person that hired them after they were age 40 is also the person during this seasonal slowdown that said, we've got to reduce the force. I understand correctly, do I understand correctly that there's a mandatory retirement age of 57 for these agents? That's correct. What is wrong then with people saying, you know, we need to groom people to positions of leadership so we have some kind of succession plan for the organization? In and of itself, that wouldn't be, that would be a fair statement. But this was in context. There were multiple statements about age. There were multiple statements followed quickly on the heels of that groom young agent statement that said, hey, what are your retirement plans? We can get you a rehired annuitant position. We can even get that for you in writing. And meanwhile, stripping away pieces of his managerial portfolio. What does that prove? I mean, it doesn't prove they don't like his age. It may prove they don't like him. They want him out. And, you know, Judge, that is the sort of the elephant in the room in this case. If they had just said, we don't like him, and the reason why we didn't select him was we don't like him, then we wouldn't have an age discrimination case. But they manufactured what we believe are these pretextual reasons which mask the true intent in this case, which was age. They never said, hey, we just don't like him. That's why we didn't select him. Okay. Let me check with Judge Gould and if there's anything further. The only question I have, I don't know that you addressed the case I raised about Poland v. Chernoff and the rule in that case, which seemed to me supported that we'd have to look at how Gilbert and how Aguilar influenced Ayer. Do you want to address that? Well, I agree with your analysis, Judge, that Gilbert essentially, and I think there were factual inaccuracies or differences in how the interview panel rated the selectees, but essentially Gilbert met with Aguilar and said, here are the people I'm recommending. Chief Vitello in his testimony said, I'm going to defer to what Chief Gilbert wants because he's going to be the patrol agent in charge in the Tucson sector where these people are going to be managed. So at least one of the other interview panel chiefs said, we're going to defer to Gilbert. Gilbert meets with Aguilar. Gilbert says, I'm not going to select France, Mr. France. Aguilar then takes exactly what Chief Gilbert forwarded to him, recommended to him, turns it around and recommends it to Ahearn. There was no change whatsoever in Chief Gilbert's recommendation to Deputy Commissioner Ahearn's selection. And therefore, he is directly involved in the management decision. I think we've run out of time. Thank you. Thanks to both gentlemen. The case has started. You can submit it. Thank you.
judges: Silverman, Gould, Hurwitz